1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILMA M.,[1] | Case No. 5:20-cv-01082-JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

## I.    SUMMARY

On May 27, 2020, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of her application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion").  The Court has taken the parties' arguments under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

_____

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On February 24, 2017, plaintiff protectively filed an application for

7    Supplemental Security Income, alleging disability beginning on July 1, 2016, due

8    to spinal surgery, head pain, arthritis, left-side weakness, swollen feet, anxiety,

9    depression, and insomnia.  (See Administrative Record ("AR") 385-88, 406).  An

10   Administrative Law Judge ("ALJ") subsequently examined the medical record and,

11   on March 6, 2019, heard testimony from a vocational expert and from plaintiff,

12   who was represented by counsel, and who communicated with the assistance of a

13   Spanish language interpreter.  (AR 243-56).  On March 25, 2019, the ALJ

14   determined that plaintiff has not been disabled since February 24, 2017, the

15   application date.  (AR 27-37).  Specifically, the ALJ found:  (1) plaintiff has the

16   following severe impairments:  anxiety, depression, and degenerative disc disease

17   of the lumbar spine status post laminectomy and fusion (AR 29); (2) plaintiff's

18   impairments, considered individually or in combination, do not meet or medically

19   equal a listed impairment (AR 30); (3) plaintiff retains the residual functional

20   capacity[2] to perform a reduced range of light work[3] (20 C.F.R. § 416.967(b)) (AR

21

22   [2]Residual functional capacity is what a claimant can still do despite existing exertional

23   and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

24   [3]Specifically, the ALJ found that plaintiff can:  (i) lift, carry, push or pull twenty pounds

25   occasionally, ten pounds frequently; (ii) occasionally push or pull with the bilateral lower
     extremities; (iii) stand or walk or sit for six hours out of an eight-hour workday and sit for six

26   hours out of an eight-hour workday; (iv) occasionally climb ramps, stairs, ladders, ropes or
     scaffolds; (v) occasionally balance, stoop, kneel, crouch or crawl; (vi) occasionally walk on

27   uneven terrain; (vii) have occasional exposure to hazards, such as unprotected heights and
     dangerous moving mechanical parts; (viii) perform only simple and routine tasks; and

28                                                                                    (continued...)

2

1  31); (4) plaintiff is capable of performing past relevant work as a "small products
2  assembler I" as generally and actually performed (AR 36); and (5) plaintiff's
3  statements regarding the intensity, persistence, and limiting effects of subjective
4  symptoms were inconsistent with the medical evidence and other evidence in the
5  record (AR 34).

6  On April 14, 2020, the Appeals Council denied plaintiff's application for
7  review of the ALJ's decision.  (AR 1-4).

8  **III.   APPLICABLE LEGAL STANDARDS**

9  **A.   Administrative Evaluation of Disability Claims**

10  To qualify for disability benefits, a claimant must show that she is unable "to
11  engage in any substantial gainful activity by reason of any medically determinable
12  physical or mental impairment which can be expected to result in death or which
13  has lasted or can be expected to last for a continuous period of not less than 12
14  months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42
15  U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by
16  regulation on other grounds; 20 C.F.R. §§ 404.1505(a), 416.905.  To be considered
17  disabled, a claimant must have an impairment of such severity that she is incapable
18  of performing work the claimant previously performed ("past relevant work") as
19  well as any other "work which exists in the national economy." Tackett v. Apfel,
20  180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

21  To assess whether a claimant is disabled, an ALJ is required to use the five-
22  step sequential evaluation process set forth in Social Security regulations.  See
23  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)
24  (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,
25  416.920).  The claimant has the burden of proof at steps one through four – *i.e.*,

26
27     [3](...continued)
28  (ix) perform only work that does not require interaction with the general public as part of the job
   duties.  (AR 31).

3

1   determination of whether the claimant was engaging in substantial gainful activity

2   (step 1), has a sufficiently severe impairment (step 2), has an impairment or

3   combination of impairments that meets or medically equals one of the conditions

4   listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and

5   retains the residual functional capacity to perform past relevant work (step 4).

6   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The

7   Commissioner has the burden of proof at step five – *i.e.*, establishing that the

8   claimant could perform other work in the national economy.  Id.

**B.     Federal Court Review of Social Security Disability Decisions**

9          A federal court may set aside a denial of benefits only when the

10   Commissioner's "final decision" was "based on legal error or not supported by

11   substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

12   F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard

13   of review in disability cases is "highly deferential."  Rounds v. Comm'r of Soc.

14   Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks

15   omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably

16   support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75

17   (citations omitted).  Even when an ALJ's decision contains error, it must be

18   affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin.,

19   775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to

20   the ultimate nondisability determination; or (2) ALJ's path may reasonably be

21   discerned despite the error) (citation and quotation marks omitted).

22          Substantial evidence is "such relevant evidence as a reasonable mind might

23   accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining

24   "substantial evidence" as "more than a mere scintilla, but less than a

25   preponderance") (citation and quotation marks omitted).  When determining

26   whether substantial evidence supports an ALJ's finding, a court "must consider the

27   entire record as a whole, weighing both the evidence that supports and the evidence

4

1  that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d
2  995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

3       Federal courts review only the reasoning the ALJ provided, and may not
4  affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."
5  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need
6  not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's
7  reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,
8  806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

9       A reviewing court may not conclude that an error was harmless based on
10  independent findings gleaned from the administrative record.  Brown-Hunter, 806
11  F.3d at 492 (citations omitted).  When a reviewing court cannot confidently
12  conclude that an error was harmless, a remand for additional investigation or
13  explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173
14  (9th Cir. 2015) (citations omitted).

15  **IV.  DISCUSSION**

16       Plaintiff claims that the ALJ erred by improperly rejecting her subjective
17  symptom testimony.  (Plaintiff's Motion at 12-15).  For the reasons stated below,
18  the Court finds that the ALJ erred on this basis.  Since the Court cannot find that
19  the error was harmless, a remand is warranted.

20       **A.   Pertinent Law**

21       When determining disability, an ALJ is required to consider a claimant's
22  impairment-related pain and other subjective symptoms at each step of the
23  sequential evaluation process.  20 C.F.R. §§ 404.1529(a), 404.1529(d), 416.929(a),
24  416.929(d).  Accordingly, when a claimant presents "objective medical evidence of
25  an underlying impairment which might reasonably produce the pain or other
26  symptoms [the claimant] alleged," the ALJ is required to determine the extent to
27  which the claimant's statements regarding the intensity, persistence, and limiting
28  effects of his or her subjective symptoms ("subjective statements" or "subjective

5

1  complaints") are consistent with the record evidence as a whole and, consequently,

2  whether any of the individual's symptom-related functional limitations and

3  restrictions are likely to reduce the claimant's capacity to perform work-related

4  activities. 20 C.F.R. §§ 404.1529(a), 404.1529(c)(4), 416.929(a), 416.929(c)(4);

5  SSR 16-3p, 2017 WL 5180304, at *4-*10.[4]  When an individual's subjective

6  statements are inconsistent with other evidence in the record, an ALJ may give less

7  weight to such statements and, in turn, find that the individual's symptoms are less

8  likely to reduce the claimant's capacity to perform work-related activities.  See

9  SSR 16-3p, 2017 WL 5180304, at *8.  In such cases, when there is no affirmative

10 finding of malingering, an ALJ may "reject" or give less weight to the individual's

11 subjective statements "only by providing specific, clear, and convincing reasons

12 for doing so."  Brown-Hunter, 806 F.3d at 488-89.  This requirement is very

13 difficult to satisfy.  See Trevizo, 871 F.3d at 678 ("The clear and convincing

14 standard is the most demanding required in Social Security cases.") (citation and

15 quotation marks omitted).

16        An ALJ's decision "must contain specific reasons" supported by substantial

17 evidence in the record for giving less weight to a claimant's statements.  SSR 16-

18 3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective

19 statement being rejected and the particular evidence in the record which

20 purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation

21 omitted).  Unless there is affirmative evidence of malingering, the Commissioner's

22 reasons for rejecting a claimant's testimony must be "clear and convincing."

23 Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks

24 ///

25

26        [4]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the
   term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective

27 symptom evaluation is not an examination of an individual's [overall character or truthfulness]
   . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See

28 SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

1   omitted), as amended (Apr. 9, 1996).  "General findings are insufficient[.]"

2   Reddick, 157 F.3d at 722 (citations omitted).

3        If an ALJ's evaluation of a claimant's statements is reasonable and is

4   supported by substantial evidence, it is not the court's role to second-guess it.  See

5   Thomas, 278 F.3d at 959 (citation omitted).  When an ALJ fails properly to discuss

6   a claimant's subjective complaints, however, the error may not be considered

7   harmless "unless [the Court] can confidently conclude that no reasonable ALJ,

8   when fully crediting the testimony, could have reached a different disability

9   determination."  Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492

10  (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will

11  usually not be harmless").

12       **B.    Plaintiff's Subjective Statements**

13       Plaintiff alleged the following in her function report on April 6, 2017:

14  Plaintiff's back injury causes her to suffer a great deal of depression, anxiety, and

15  chronic insomnia.  (AR 438).  She experiences constant pain every day, and the

16  medications only help a little, so she cannot sleep on some nights, and she

17  struggles with most physical activities.  (AR 432, 438).  She reads, watches

18  television, talks to friends on the phone daily, and goes out to eat with friends.

19  (AR 435).  She makes her own meals every day, which takes about fifteen minutes.

20  (AR 433).  She also does household chores such as light laundry and dusting about

21  once a week, and washing dishes about three times a week for ten minutes at a

22  time.  (AR 433).  She sometimes needs help lifting laundry.  (AR 433).  She drives

23  herself, does "minimal exercises" at the gym three days a week, and goes shopping

24  for clothes or groceries about once a week for an hour.  (AR 434-35).  She cannot

25  go to sporting events or concerts and cannot drive long distances.  (AR 436).  She

26  cannot stand or sit for long periods, lift more than ten or fifteen pounds, bend over,

27  or do any activity that exacerbates her back pain.  (AR 431).  She can walk for

28  about thirty minutes before needing a fifteen-minute rest.  (AR 436).  She has

1   difficulty handling stress, and struggles to deal with changes in her routine.  (AR
2   437).
3          Plaintiff alleged the following in her hearing testimony on March 6, 2019:
4   Her 2011 spinal fusion surgery helped a little with her leg numbness, and her
5   physical therapy also helped while she was doing it, but repetitive bending over or
6   lifting still causes pain, and she is unable to do everyday tasks, such as picking
7   things up from the floor.  (AR 248-49).  She also has difficulty opening bottles due
8   to tendonitis in the left shoulder, though the physical therapy helped with that as
9   well.  (AR 249).  She was currently awaiting a doctor's authorization to continue
10  with physical therapy.  (AR 249).  Plaintiff experiences "depression with a lot of
11  anxiety," including panic attacks, which cause her to become "very panicky" about
12  hurting herself, and she gets diarrhea and has difficulty sleeping.  (AR 250).  She
13  sees a therapist every other week for these conditions, which has helped her feel
14  more secure and sleep better.  (AR 250-52).  She now sleeps well three or four
15  nights out of the week, though sometimes for only four or five hours.  (AR 251-
16  52).  Her depression and anxiety also cause  pain in her head and stomach, along
17  with diarrhea.  (AR 250).  However, she has "some very difficult days."  (AR 250).
18  On days when she has not slept, her head hurts a lot, the pain in her back and legs
19  increases, and she feels like vomiting and cannot eat.  (AR 252).  On such days,
20  she cannot leave the house, and she spends the day just lying down.  (AR 252).
21  This occurs two or three days a week, and she would be unable to work on such
22  days.  (AR 252).

23          **C.     Analysis**

24          The ALJ determined that plaintiff's "medicall determinable impairments
25  could reasonably be expected to cause the alleged symptoms," but plaintiff's
26  "statements concerning the intensity, persistence and limiting effects of these
27  symptoms are not entirely consistent with the medical evidence and other evidence
28  in the record for the reasons explained in th[e] decision."  (AR 34).  However, the

8

1  ALJ failed to provide specific, clear, and convincing reasons to support this
2  determination.

3        First, the ALJ asserted that plaintiff's alleged limitations were undermined
4  by her activities of daily living, while noting in particular that plaintiff "prepared
5  meals, performed light household chores, went places alone, could drive a vehicle,
6  went shopping and spent time with others."  (AR 33).  However, the ALJ did not
7  specify or explain how any of these activities conflicted with any of plaintiff's
8  statements or alleged limitations.  The ALJ instead stated, vaguely, that "some of
9  the physical and mental abilities and social interactions required in order to
10 perform these activities are the same as those necessary for obtaining and
11 maintaining employment and are inconsistent with the presence of an
12 incapacitating or debilitating condition." (AR 33).  Without further explanation,
13 the rationale for this finding remains unclear.  It is unclear, for example, how
14 plaintiff's ability to do light cleaning once a week, or to shop about once a week
15 for an hour at a time, demonstrates an ability to maintain employment.  It is further
16 unclear how such activities conflict with plaintiff's alleged limitations, which
17 include an inability to lift more than ten or fifteen pounds, to stand or sit for long
18 periods, or to walk for more than thirty minutes at a time without resting.  (AR
19 431, 436).  Moreover, none of plaintiff's reported activities conflicts with her
20 testimony that for two or three days a week, she cannot leave the house due to pain,
21 fatigue, nausea, and lack of sleep, and would be unable to go to work on such days.
22 (AR 251-52).  Because the ALJ failed to articulate why plaintiff's activities
23 undermine her subjective statements, this is not a clear and convincing basis for
24 discounting such statements.  See Treichler, 775 F.3d at 1103 ("Although the
25 ALJ's analysis need not be extensive, the ALJ must provide some reasoning in
26 order for us to meaningfully determine whether the ALJ's conclusions were
27 supported by substantial evidence.").
28 ///

The ALJ's only other asserted basis for discounting plaintiff's statements is the purported lack of objective medical evidence,[5] which is not a sufficient basis, in itself, although it may be a relevant factor.  <u>See, e.g.</u>, <u>Burch</u>, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, however, the ALJ did not specify or explain how any of plaintiff's medical evidence undermined or contradicted her statements and testimony.  The ALJ instead simply referenced plaintiff's examination findings, including normal range of motion, intact sensation, full motor strength, and normal posture and gait.  (AR 33).  The ALJ also pointed to plaintiff's mental status examinations – noting in particular that from January 27 to June 30, 2017, plaintiff presented with a depressed mood, constricted affect, and partial insight, but she "had average eye contact, cooperative attitude, clear speech, logical thought process, normal cognition and only mildly impaired to normal judgment"; and on August 25, 2017, she similarly showed a constricted affect and partial insight, but an "euthymic mood, clear speech, logical thought process, normal thought content, normal cognition and normal judgment."  (AR 33; <u>see</u> AR 488-98, 546-84).  Without further explanation, the ALJ fails to demonstrate how these findings support the rejection of plaintiff's statements – including, among other things, her testimony that she would miss work two or three days a week due to pain, fatigue, and other symptoms.  <u>See</u> <u>Lambert v. Saul</u>, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not

---

[5]Although the ALJ asserted that plaintiff "has not generally received the type of medical treatment one would expect for an individual with the severity of symptoms alleged" (AR 33), the ALJ did not actually discuss or reference plaintiff's "treatment," *per se*, as a basis for discounting her subjective complaints.  Instead, the ALJ followed this reference to "treatment" by noting only the examination findings.  (AR 33).

10

1  credible.") (quoting <u>Brown-Hunter</u>, 806 F.3d at 494); <u>see also</u> <u>id.</u> at 1268 ("[T]he

2  ALJ must identify the specific testimony that he discredited and explain the

3  evidence undermining it.").

4       Because the ALJ failed to provide specific, clear, and convincing reasons to

5  discount plaintiff's subjective statements, remand is warranted for reconsideration

6  of these statements.[6]  <u>See</u> <u>Treichler</u>, 775 F.3d at 1103 ("Because 'the agency's

7  path' cannot 'reasonably be discerned,' we must reverse the district court's

8  decision to the extent it affirmed the ALJ's credibility determination.") (quoting

9  <u>Alaska Dep't of Env't Conserv. v. E.P.A.</u>, 540 U.S. 461, 497 (2004)).

10 **V.     CONCLUSION**

11      For the foregoing reasons, the decision of the Commissioner of Social

12 Security is REVERSED and this matter is REMANDED for further administrative

13 action consistent with this Opinion.[7]

14      LET JUDGMENT BE ENTERED ACCORDINGLY.

15 DATED:  April 6, 2021

16                                    _____
                                                    /s/
17                                    Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23      [6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
24 decision, except insofar as to determine that a reversal and remand for immediate payment of
   benefits would not be appropriate.

25      [7]When a court reverses an administrative determination, "the proper course, except in
26 rare circumstances, is to remand to the agency for additional investigation or explanation."
   <u>Immigration & Naturalization Service v. Ventura</u>, 537 U.S. 12, 16 (2002) (citations and
27 quotations omitted); <u>Treichler</u>, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in
   Social Security cases) (citations omitted). The Court has determined that a reversal and remand
28 for immediate payment of benefits would not be appropriate.